JEFFREY LAUREN LAND COMPANY v CITY OF LIVONIA

Docket No. 53189. Submitted April 22, 1981, at Detroit.—Decided September 11, 1981. Leave to appeal applied for.

The Jeffrey Lauren Land Company applied to the City of Livonia for waiver-use approval which would allow it to construct a new four-theater complex in Livonia. Under the zoning ordinance applicable to the property involved, theaters were not a permitted use but were subject to waiver-use approval. The application to build the four-theater structure was approved by the city planning commission and the department of public safety but was rejected by the city council. The reasons given for the rejection were that the area already had sufficient theaters, with one already on the property involved, that an increase in traffic would cause added traffic problems to already overburdened roads and that the site involved could not adequately accommodate the increased intensity of use. The Jeffrey Lauren Land Company then filed a three-count complaint in Wayne Circuit Court, Count I of which was a prayer for a writ of mandamus finding the action of the city council illegal and arbitrary and ordering that the defendant city grant plaintiff's petition to construct the four-theater complex. The writ of mandamus was denied and Count I of the complaint was dismissed with prejudice, Blair Moody, Jr., J. The com-

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Amusements and Exhibitions § 20.
    82 Am Jur 2d, Zoning and Planning § 289.
[2] 8 Am Jur 2d, Zoning and Planning §§ 101, 283.
[3] 16A Am Jur 2d, Constitutional Law § 387.
[4] 82 Am Jur 2d, Zoning and Planning § 25.
[5, 6] 82 Am Jur 2d, Zoning and Planning § 15.
[7] 82 Am Jur 2d, Zoning and Planning § 337.
[8] 82 Am Jur 2d, Zoning and Planning §§ 14, 103.
    Validity, construction, and effect of agreement to rezone, or amendment to zoning ordinance, creating special restrictions or conditions not applicable to other property similarly zoned. 70 ALR3d 125.
[9] 82 Am Jur 2d, Zoning and Planning § 354.
[10] 16A Am Jur 2d, Constitutional Law § 498.

plaint was then amended to challenge the constitutionality of the zoning ordinance. A trial was held and the ordinance was found to be unconstitutional, Joseph G. Rashid, J. Defendant appeals. *Held:*

1. A city may amend its zoning ordinances so as to classify theaters as a special or waiver use subject to review and compliance with specific standards with respect to location and structure when no attempt is made to restrict the content and type of film shown.

2. The record supports a finding that defendant's ordinance furthers reasonable governmental interests and that plaintiff did not establish that the ordinance was an arbitrary or capricious use of governmental authority.

3. The ordinance involved did not totally exclude movie theaters from the City of Livonia.

4. The ordinance is not invalid as a prior restraint.

Reversed.

1. ZONING — THEATERS AND SHOWS — SPECIAL OR WAIVER USE.

A city may amend its zoning ordinance so as to classify theaters as a special or waiver use subject to review and compliance with specific standards with respect to location and structure when no attempt is made to restrict the content and type of film shown.

2. ZONING — ZONING ENABLING ACT — STATUTES.

The zoning enabling act specifically allows a municipality to provide in its zoning ordinances for specific land uses which will be permitted in a zoning district only after review and approval by a commission; it also provides that the legislative body of the municipality may deny requests for special land use provided that it indicates the specific basis for its decision (MCL 125.584a; MSA 5.2934[1]).

3. CONSTITUTIONAL LAW — POLICE POWERS — PUBLIC HEALTH, SAFETY, MORALS AND GENERAL WELFARE.

The test of legitimacy of a particular governmental proscription is the existence of a real and substantial relationship between the exercise of the government's police powers and the public health, safety, morals and general welfare.

4. CONSTITUTIONAL LAW — ORDINANCES — PRESUMPTION OF VALIDITY.

Zoning ordinances are presumed to be constitutional unless proven otherwise by competent evidence or unless they are facially invalid.

5. ZONING — CONSTITUTIONAL LAW — THEATERS AND SHOWS.

A municipality can constitutionally pass ordinances restricting movie theaters to specified areas or preclude them absent a waiver or zoning amendment so long as the ordinances further a reasonable governmental interest and are not arbitrary or capricious.

6. ZONING — ORDINANCES — CONSTITUTIONAL LAW.

A plaintiff, in order to successfully challenge a zoning ordinance as being unconstitutional, must prove either that there is no reasonable governmental interest being advanced by the zoning classification itself or that the ordinance is unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question.

7. APPEAL — ZONING — ORDINANCES — CONSTITUTIONAL LAW.

The four rules applied by appellate courts in determining the constitutional validity of a zoning ordinance are: (1) the ordinance comes clothed with every presumption of validity, (2) the plaintiff has the burden of affirmatively proving that the ordinance is an arbitrary and unreasonable restriction upon his use of his property and it must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness, (3) the plaintiff must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted, and (4) considerable weight is given to the findings of the trial court.

8. ZONING — ORDINANCES — TOTALLY EXCLUDED USE — CONSTITUTIONAL LAW — EQUAL PROTECTION.

An ordinance which, on its face, totally excludes from a municipality a use recognized by the constitution or other laws of Michigan as legitimate also carries with it a strong taint of unlawful discrimination and a denial of equal protection of the law as to the excluded use; such a taint can hardly be presumed to be present when the general use is reasonably permitted in the community and the only issue is whether it was arbitrarily or capriciously denied as to a particular parcel of land.

9. ZONING — ORDINANCES — PRESUMPTION OF VALIDITY.

There is a presumption that a city acts for valid reasons in enacting zoning ordinances which exclude certain uses of a

particular piece of property; in order to show arbitrariness and capriciousness on the part of the city, a plaintiff must show that the city did not act for a valid reason or that no such grounds reasonably exist with respect to a particular piece of property.

10. CONSTITUTIONAL LAW — PRIOR RESTRAINTS.

Legislation must purport to regulate the content of the subject of the legislation in an impermissible manner or have the direct and intended effect of doing so in order to constitute a prior restraint which makes the peaceful enjoyment of constitutionally guaranteed freedoms contingent upon the uncontrolled will of some official or official body—as by requiring a permit or license which may be granted or withheld in the discretion of such official or body.

*Arthur J. Hass,* for plaintiff.

*Harry C. Tatigian,* City Attorney, for defendant.

Before: N. J. KAUFMAN, P.J., and ALLEN and D. C. RILEY, JJ.

D. C. RILEY, J. Defendant appeals as of right from a decision of the trial court rendering unconstitutional a zoning ordinance which purportedly precludes the erection of additional movie theaters in Livonia.

Plaintiff, a motion picture exhibitor, purchased 21 acres of land in Livonia at the northeast corner of Plymouth and Farmington Roads in 1961. The southern half of this property, approximately 11 acres, has been zoned C-2 (general business) since 1952. The balance of the property is zoned M-1 (light manufacturing) and is not a factor in these proceedings. At present, plaintiff owns and operates a 1,400 seat theater on this property.[1]

[1] The existing theater was built prior to 1965 in the M-1 district. Although it is now a nonconforming use, the theater can be sustained, repaired, remodeled and improved. However, if destroyed, it cannot be rebuilt. It may be enlarged only with the zoning board's approval.

Livonia's first zoning ordinance (Ordinance #60) was enacted in 1952 and remained in effect until 1965 when it was replaced by Ordinance #543. Under the new ordinance, theaters could not be built in M-1 districts and were permitted only in a C-2 district. Seven years later, in 1973, § 1103 was added to Livonia's zoning regulations with the enactment of Ordinance #1071. This ordinance removed theaters as a permitted use in C-2 districts and they were made subject to waiver-use approval.

This appeal arises from defendant's refusal to grant a waiver use which would allow plaintiff to construct a new four-theater complex, with a seating capacity of over 1,800 people, on the southern parcel of property zoned C-2.

Plaintiff's application to build the four-theater structure was submitted to the city planning commission in 1974. The commission and the department of public safety approved the plan but it was ultimately rejected by the city council for the following reasons:

"1. The area is already adequately served by theaters, one already existing on the subject site;

"2. The proposed development would generate an increase in traffic and would cause added traffic problems to the major roads of Farmington and Plymouth Roads, which are already overburdened with traffic;

"3. The proposed use, which would add a quad-theater with a seating capacity of 1,835 seats would overburden the site and the area, as the site does not have the capacity to adequately accommodate the increased intensity of use."

In reviewing a waiver-use petition, the council does not exercise any discretion in the application of the special standards set out in § 11.03(q), but it

does have discretion in applying the general standards of § 19.06. In refusing plaintiff's petition, the council invoked its absolute discretion provided by ordinances and charter even though plaintiff's petition had conformed with all of the requirements set forth in 11.03(q).[2]

We note first that this ordinance does not, on its face, censor any particular type of movie or theater. It applies equally to all theaters. It is ostensibly a land use regulation and not a censorship ordinance. We note further that the record before us indicates that there are presently three theater complexes consisting of a total of six theaters now located in Livonia. Further, C-2 zoning allows for numerous commercial ventures for which the parcel at issue has substantial value. Finally, with the enactment of Ordinance #1101 in 1972, theaters may be constructed in a C-3 district as a permitted use. This, however, would require a zoning change.

[2] Section 11.03(q) provides:

"(q) Theaters, enclosed (not including drive-in theaters) but only when such use is carried on in a building properly designed and suitable for theater use and when such theater is located on a parcel of land five (5) acres or more in size. The Planning Commission shall recommend approval of a theater located on a parcel of land more than five (5) acres in size only if it finds that the proposal for such use complies with the following additional requirements.

"(1) Such use shall have a minimum seating capacity of four hundred (400) seats.

"(2) Such use shall have direct access by means of at least two (2) separate entrances and exits to a major thoroughfare having an existing or planned width of one hundred twenty (120) feet or more as designated on the Master Thoroughfare Plan of the City of Livonia.

"(3) Signs shall be provided pursuant to Section 18.50E and shall be non-flashing."

In an opinion dated July 15, 1976, the trial judge held that the Livonia City Council's decision to deny plaintiff a waiver use was not an abuse of discretion. A panel of this Court affirmed that ruling in an unpublished per curiam opinion, *Jeffrey Lauren Land Co v Livonia,* docket no. 77-1181, released January 10, 1978, and the Supreme Court denied leave to appeal, 405 Mich 819 (1979). Thus, the only issues left for our resolution at this time concern whether the lower court erred in finding the Livonia ordinance unconstitutional.

Plaintiff has not petitioned the City of Livonia to rezone the subject property or any other property to a C-3 use.

Defendant first argues that a city may amend its zoning ordinance so as to classify theaters as a special or waiver use subject to review and compliance with specific standards with respect to location and structure when no attempt is made to restrict the content and type of film shown.

We find this argument consistent with MCL 125.584a; MSA 5.2934(1), the zoning enabling act, which specifically allows a municipality to provide in its zoning ordinances for specific land uses which will be permitted in a zoning district only after review and approval by a commission. This section also provides that the legislative body may deny requests for special land use provided that it indicates the specific basis for its decision.

In order to determine the validity of a particular governmental proscription, a test measuring the "existence of a real and substantial relationship" between the exercise of the police power and the public health, safety, morals and general welfare will be applied. *People v Yeo,* 103 Mich App 418, 421; 302 NW2d 883 (1981). Also, all such ordinances are presumed constitutional unless proven otherwise by competent evidence, or unless they are facially invalid. *Id.* see also *Bruni v Farmington Hills,* 96 Mich App 664, 668; 293 NW2d 609 (1980). In this case, the statute in question does not, *on its face,* affect constitutional rights; it does not purport to regulate the content or types of movies shown.

Defendant also argues that motion picture theaters which cater to general audiences are not within the ambit of the First and Fourteenth Amendments of the United States Constitution

and article I, § 5 of the Michigan Constitution. Plaintiff's contention, on the other hand, is that motion picture theaters stand on the same footing as motion pictures themselves in terms of the applicability of the First and Fourteenth Amendments.

Our assessment of the relevant cases persuades us that defendant is correct.

A municipality can constitutionally pass ordinances restricting movie theaters to specified areas or preclude them absent a waiver or zoning amendment, as in the instant case. Such ordinances must, of course, further a reasonable governmental interest and not be arbitrary or capricious. *Jamens v Avon Twp (On Remand),* 78 Mich App 289; 259 NW2d 349 (1977).

In *Young v American Mini Theatres, Inc,* 427 US 50; 96 S Ct 2440; 49 L Ed 2d 310 (1976), the Court addressed a zoning ordinance restricting the location of "adult theaters". In language we find particularly instructive, the Court stated:

> "The city's general zoning laws require all motion picture theaters to satisfy certain locational as well as other requirements; *we have no doubt that the municipality may control the location of theaters as well as the location of other commercial establishments, either by confining them to certain specified commercial zones or by requiring that they be dispersed throughout the city.* The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances." (Emphasis added.) *Id.,* 62.

Further, we are in accord with defendant's argument that a movie theater is not a "preferred use" which would preclude a municipality from constitutionally excluding the construction of a movie

theater by a zoning ordinance. Defendant correctly argues that the "preferred or favored use" doctrine was overruled by *Kropf v Sterling Heights,* 391 Mich 139, 156; 215 NW2d 179 (1974). In *Ed Zaagman, Inc v Kentwood,* 406 Mich 137, 153–154; 277 NW2d 475 (1979), our Supreme Court established the standards by which the constitutionality of all zoning ordinances are measured and expressly affirmed the standards set forth in *Kirk v Tyrone Twp,* 398 Mich 429; 247 NW2d 848 (1976), and *Kropf.*

" 'The principles and tests to use to determine whether the present zoning of plaintiffs' property is valid was detailed in *Kropf.*

" 'The important principles require that for an ordinance to be successfully challenged plaintiffs prove:

" ' "[F]irst, that there is no reasonable governmental interest being advanced by the present zoning classification itself * * * or

" ' "[S]econdly, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question." 391 Mich 139, 158.

" 'The four rules for applying these principles were also outlined in *Kropf.* They are:

" '1. "[T]he ordinance comes to us clothed with every presumption of validity." 391 Mich 139, 162, quoting from *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957).

" '2. "[I]t is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property * * *. It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness." 391 Mich 139, 162, quoting *Brae Burn, Inc.*

" '3. "Michigan has adopted the view that to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the

consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted." 391 Mich 139, 162-163.

" '4. "This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases." 391 Mich 139, 163, quoting *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962).' 398 Mich 429, 439-440."

Defendant also challenges the trial court's ruling that the ordinance was unconstitutional because it served as a total prohibition of the erection of movie theaters in the City of Livonia. While appellate courts give considerable weight to the findings of the trial judge in equity cases, reviewing this record *de novo,* we find that this ordinance did not totally exclude movie theaters from the City of Livonia. *Biske v City of Troy,* 381 Mich 611; 166 NW2d 453 (1969), *Christine, supra.*

In *Kropf, supra,* 155-156, the Court stated:

"On its face, an ordinance which *totally* excludes from a municipality a use recognized by the constitution or other laws of this state as legitimate also carries with it a strong taint of unlawful discrimination and a denial of equal protection of the law as to the excluded use. Such a taint can hardly be presumed to be present in cases such as that presently before us when the general use is reasonably permitted in the community and the only issue is whether it. was arbitrarily or capriciously denied as to this particular parcel of land." (Emphasis in original.)

This statement is particularly appropriate to the case at bar. In *Kropf,* the City of Sterling Heights had enacted a zoning ordinance which precluded multi-family dwellings in a single-family residential district. The Court refused to find that the

ordinance was unconstitutional and stated that there may be several rational reasons a city may have in excluding other uses from a particular piece of property. In such a case, there is a presumption that the city acted for such reasons, or for any other valid reasons, in enacting the particular ordinance. In order to show arbitrariness and capriciousness on the part of the city, a plaintiff must show that it did not act for a valid reason, or that no such grounds reasonably exist with respect to a particular piece of property. *Id.,* 160-161. The Court went on to state that it would not second-guess local governing bodies in the absence of a showing that the body was arbitrary or capricious in its exclusion of other uses from a single-family residential district. *Id.,* 161. The burden, therefore, is with the plaintiff to establish that the unreasonableness of the ordinance is apparent and indisputable. *Brae Burn, Inc, supra.*

In the instant case, it is without a doubt true that the ordinance does not, on its face, preclude the building of movie theaters in the City of Livonia. The trial judge, in support of his decision, relied on several opinions, all of which we believe to be distinguishable.

*Roman Catholic Archbishop of Detroit v Village of Orchard Lake,* 333 Mich 389; 53 NW2d 308 (1952), involved an ordinance which, on its face, allowed churches and schools, under special permit only, in three zones comprising about ten percent of the village's area while completely prohibiting them in the fourth zone which constituted the balance of the village. When applied to the existing facts and circumstances, however, the ordinance served to exclude churches and schools completely from the village. The Court held the ordinance unconstitutional.

*Ferndale v Ealand (On Remand),* 92 Mich App 88, 91; 286 NW2d 688 (1979), also relied upon by the trial judge, dealt with the constitutionality of a zoning ordinance which set up a special criteria for adult motion picture theaters. Since that ordinance involved the regulation of speech, the Court recognized that the ordinance precluded a constitutionally recognized use.

The other cases cited by the court, *Tocco v Atlas Twp,* 55 Mich App 160; 222 NW2d 264 (1974), *Gundersen v Village of Bingham Farms,* 372 Mich 352; 126 NW2d 715 (1964), and *Dequindre Development Co v Warren Twp,* 359 Mich 634; 103 NW2d 600 (1960), all dealt with yet another constitutionally protected use—housing—and involved ordinances which attempted to completely prohibit trailer parks and mobile homes.

A careful consideration of these cases persuades us that all speak to a use that is implicitly protected by our federal and state constitutions and thereby shift the burden of proof to the governmental unit. Measured by this standard, we cannot conclude that the erection of a motion picture theater is a constitutionally protected use or that the City of Livonia should carry the burden of proving the reasonableness of the ordinance.

Furthermore, classifying or zoning theaters is particularly justified since theaters are atypical of other commercial uses and require regulation to prevent safety hazards and other related problems. In the instant case, the record supports a finding that Livonia's ordinance furthers reasonable governmental interests and that plaintiff did not establish that the ordinance was an arbitrary or capricious use of governmental authority. *Jamens, supra.*

Most importantly, the instant ordinance does

not totally exclude movie theaters from the city. Unlike the aforementioned cases relied upon by the trial judge which dealt with unconstitutional exclusion, where no property was allocated for the desired use, Livonia is a substantially developed community in which several theater complexes already exist. *Kropf, supra.* That this ordinance cannot be viewed as a complete prohibition of motion picture theaters is shown by the fact that theaters may be built in a C-2 district upon approval of a waiver use or in a C-3 district. There is no proof that defendant would deny any and all zone change requests since it has no history of doing so and because there is a large amount of C-2 property which could conceivably be rezoned to C-3. Finally, it cannot be said that defendant acted in an unreasonable and arbitrary manner in denying plaintiff's petition.

Plaintiff's final contention is that the ordinance is invalid as a prior restraint in violation of the First and Fourteenth Amendments. To constitute a prior restraint, case law requires that the legislation must purport to regulate content in an impermissible manner or have the direct and intended effect of doing so. *Young, supra, Burstyn v Wilson,* 343 US 495; 72 S Ct 777; 96 L Ed 1098 (1952). This is not the situation here.

Reversed. No costs.